**PERKINS THOMPSON, P.A.**
One Canal Plaza, 9th Floor
PO Box 426
Portland, ME  04112
(207) 774-2635
Randy J. Creswell, Esq.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TRANSCARE CORPORATION, | ) | Chapter 7 |
| | ) | Case No.: 16-10407 (SMB) |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | |
| | ) | |
| TRANSCARE NEW YORK, INC., | ) | Chapter 7 |
| | ) | Case No.: 16-10408 (SMB) |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | |
| | ) | |
| TRANSCARE ML, INC., | ) | Chapter 7 |
| | ) | Case No.: 16-10409 (SMB) |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | |
| | ) | |
| TC AMBULANCE GROUP, INC., | ) | Chapter 7 |
| | ) | Case No.: 16-10410 (SMB) |
| Debtor. | ) | |
| _____ | ) | |
| In re: | ) | |
| | ) | |
| TRANSCARE MANAGEMENT | ) | Chapter 7 |
| SERVICES, INC. | ) | Case No.: 16-10411 (SMB) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

-2-

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| TCBA AMBULANCE, INC., | ) | Chapter 7 |
| | ) | Case No.: 16-10412 (SMB) |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| TC BILLING AND SERVICES CORPORATION, | ) | Chapter 7 |
| | ) | Case No.: 16-10413 (SMB) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| TRANSCARE WESTCHESTER, INC., | ) | Chapter 7 |
| | ) | Case No.: 16-10414 (SMB) |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| TRANSCARE MARYLAND, INC., | ) | Chapter 7 |
| | ) | Case No.: 16-10415 (SMB) |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| TC AMBULANCE NORTH, INC., | ) | Chapter 7 |
| | ) | Case No.: 16-10416 (SMB) |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| TRANSCARE HARFORD COUNTY, INC., | ) | Chapter 7 |
| | ) | Case No.: 16-10417 (SMB) |
| Debtor. | ) | |
| | ) | |

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

{P1108916.2}

**RESPONSE OF PATRIACH PARTNERS AGENCY SERVICES, LLC TO MOTION FOR THE ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. §§ 105 AND 721, AUTHORIZING THE CHAPTER 7 TRUSTEE TO OPERATE THE DEBTORS' BUSINESSES AND PAY CERTAIN OPERATING EXPENSES OF THESE ESTATES**

Patriarch Partners Agency Services, LLC ("PPAS"), by and through its undersigned counsel, hereby responds to the Motion for the Entry of an Order, Pursuant to 11 U.S.C. §§ 105(a) and 721, Authorizing the Chapter 7 Trustee to Operate the Debtors' Businesses and Pay Certain Operating Expenses of These Estates, dated February 26, 2016 (the "Motion to Operate") (DE 7), as follows.

In sum, PPAS supports the efforts of Interim Chapter 7 Trustee Salvatore LaMonica (the "Trustee") to wind down and operate on a limited basis the former businesses of Debtors.[1] PPAS believes that such efforts will minimize, as best as possible under the circumstances, the impact of the loss of those businesses upon the former recipients of those such services and other parties in interest in these cases. PPAS further believes and asserts that such impacts would have been considerably lessened if the efforts of PPAS to coordinate an orderly wind down in the weeks leading up to the Petition Date[2] would have been allowed to come to fruition. Such efforts were stymied, however, primarily because Wells Fargo Bank, N.A. ("Wells Fargo"), the prepetition asset-based lender with a first-priority position in Debtors' accounts, refused to provide debtor-in-possession funding for a potential Chapter 11 case, would not permit PPAS to provide such funding on a priming basis, and then substantially reduced its willingness or desire to provide post-petition funding to the Chapter 7 estates predominantly for the payment of existing payroll obligations. As a result, Debtors' prepetition businesses abruptly ceased operations upon the Petition Date in the unfortunate manner that they did. PPAS, therefore,

---

[1] "Debtors" shall mean the eleven separate corporate entities listed in the above caption.

[2] As defined in the Motion to Operate, *i.e.,* February 24, 2016.

supports the Trustee's present efforts to mitigate the impact upon the estates and the wider constituencies and interested parties.

## Background

1. PPAS is the administrative agent for a number of prepetition secured lenders (collectively, the "Lenders") of Debtors, which lending relationship began in 2003.

2. From 2003 to the Petition Date, those Lenders provided loans to Debtors on a secured basis in the approximate amount of $46 million dollars for the operation of their businesses. In the last three months alone, the Lenders provided Debtors with approximately $3.5 million dollars for the predominant purpose of covering payroll obligations of the prepetition Debtors. In the last twelve months, certain of the Lenders provided approximately $9.2 million dollars to the prepetition Debtors, again, in order to cover payroll for the benefit of Debtors' prepetition employees and to pay other corporate obligations.

3. During this same time frame, Wells Fargo, as an asset-based lender of Debtors, has been sweeping funds *out* of Debtors' prepetition business accounts because it apparently has deemed itself out of formula or undersecured on its lending base, continually taking additional reserves and reducing its loan balance to the companies. Wells Fargo's actions had the practical effect of depriving Debtors of the financial ability to fully satisfy all of their operating obligations, including payroll to their employees.

4. As Debtors' financial situation worsened, PPAS (on behalf of the Lenders), the prepetition Debtors, and Wells Fargo engaged in a dialogue for the orderly wind down (or transition in certain instances) of Debtors' prepetition business, and the financial requirements for such a wind down. Unfortunately, those discussions among PPAS, Debtors, and Wells Fargo essentially ceased once it became clear that Wells Fargo, as the first-priority lender with respect

to Debtors' accounts,[3] would not provide any debtor-in-possession funding for a potential Chapter 11 case.  Nor would Wells Fargo allow Lenders to provide such funding to Debtors, as prospective debtors-in-possession, upon usual and customary terms for such junior-priority party funding, for the short (perhaps eight weeks, ideally less) period of time necessary to wind down the business in an orderly way.

5.  Faced with that reality, PPAS began taking steps to preserve approximately 700 jobs of the soon-to-be defunct businesses (whether through this filing, as ultimately happened, or otherwise), through the formation of two new entities to carry on certain of Debtors' businesses, including the paratransit services provided by prepetition Debtors in the City of New York.

6.  In furtherance of those efforts to save certain aspects of Debtors' prepetition operations and the substantial number of jobs (approximately 700) associated with those operations, on February 24, 2016 (and prior in time to the actual filing of these Chapter 7 cases), the Lenders, through their agent, PPAS, consummated a strict foreclosure pursuant to applicable New York law of certain of their collateral in partial satisfaction of Debtors' obligations to the Lenders.  In particular, Lenders foreclosed their interests in, *inter alia*, all of Debtors' personal property, vehicles (*i.e.,* ambulances), certain contracts, certain certificates for operation, and the shares of stock in certain non-filing subsidiaries of Transcare Corporation.  Lenders specifically excluded any accounts of Debtors in the strict foreclosure.

7.  The strict foreclosure of certain of Debtors' prepetition assets was necessary in order to allow the new entities to carry on those aspects – and save the related jobs – of Debtors' prepetition operations that could be saved – for without those assets, the new businesses simply could not operate.

---

[3] As defined in the Motion to Operate, *i.e.,* February 24, 2016.

8.  Thereafter, from the Petition Date through and beyond the close of business on Friday, February 26, PPAS sought to work and coordinate with the Metropolitan Transit Authority for the City of New York, the Trustee and his counsel, and the former employees of certain of Debtors' prepetition businesses, for the continuation of paratransit and other services formerly provided by Debtors prior to the Petition Date. Despite those substantial efforts, because of insurmountable logistical issues associated with efforts to make payroll obligations, the inability to obtain certain assurances and commitments for the further provision of such services, and other challenges relating to the continuation of those certain businesses, it became clear that the Lenders' desire and commitment to continue with those business lines was far outmatched by the confluence of the circumstances in real time, and all those efforts stopped.

9.  The Lenders, through PPAS, nevertheless continue their desire to see Debtors' estates wound down in the most orderly, efficient, and safe way possible. Accordingly, they support the Trustee's efforts here as requested in the Motion to Operate.

## Discussion

### A.   Authority to Operate Business – 11 U.S.C. § 721

10. Section 721 of the Code provides that the "court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." 11 U.S.C. § 721. "Section 721 gives the trustee broad authority to operate a Chapter 7 debtor's business once the court has determined that it is in the interests of the estate to operate that business." *In re Dalen*, 259 B.R. 586, 598 (Bankr. W.D. Mich. 2001).

> Although the principal duty of the chapter 7 trustee is "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest," 11 U.S.C. § 704(1), section 721 of the Code allows bankruptcy courts to

authorize a chapter 7 trustee to operate the debtor's business for a limited period of time, if operation of the business is in the best interest of the estate and consistent with an orderly liquidation. *See* 11 U.S.C. § 721.

*In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 319 n.6 (3rd Cir. 2003); *In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 668 (Bankr. S.D. Tex. 2009) *aff'd sub nom. Hsu v. W.*, CIV.A. H-09-3131, 2009 WL 7760300 (S.D. Tex. Dec. 30, 2009) ("In the few opinions that have found § 721 authorization necessary, the trustees were attempting to operate or to expand the businesses as going concerns."); *In re Transcon Lines*, 178 B.R. 228, 234 (Bankr. C.D. Cal. 1995) ("The Code authorizes that under appropriate circumstances the trustee may even operate the debtor's business for a limited period, *see* § 721, thereby allowing for the possibility of a sale of the business as a going concern."); *In re A & T Trailer Park, Inc.*, 53 B.R. 144, 147 (Bankr. D. Wyo. 1985) ("Section 721 contemplates such authorization only in a limited number of situations, such as where it appears that a business could be sold for a greater price as a going concern than would be obtained in ordinary liquidation.").

11. "A trustee is authorized to operate the business of the debtor under section 721 of the Code. This power includes the ability to obtain unsecured credit and to incur unsecured debt in the ordinary course of business. 11 U.S.C. § 364(a). . . . A debt incurred under section 364(a) is allowable as an administrative expense under section 503(b)(1)(A)." *In re Cascade Oil Co., Inc.*, 51 B.R. 877, 880-81 (Bankr. D. Kan. 1985).

12. Section 364(a) of the Code provides, in pertinent part: "If the trustee is authorized to operate the business of the debtor under section 721 . . . of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense." 11 U.S.C. § 364(a).

13. PPAS and the Lenders, for many weeks and months, have specifically sought and worked diligently to avoid the precise situation now occurring with respect to the collapse of Debtors' business – most notably by providing Debtors with over $9 million dollars in funding in large measure to cover employee payroll obligations, while at the same time Wells Fargo was pulling funds *out* of Debtors to reduce its own financial exposure – and so they are supportive of the Trustee's efforts here as set forth in the Motion to Operate.

14. Consequently, to the extent that the Court finds and concludes that the Motion to Operate has merit and should be granted, and that Wells Fargo should be provided the protections requested in ¶ 13 of the Motion to Operate, then PPAS does not object to the Court's granting of that relief in this instance.[4]

## Conclusion

WHEREFORE, Patriarch Partners Agency Services, LLC states that it does not oppose the relief requested in the Motion to Operate, and PPAS requests that the Court grant it such other and further relief as may be appropriate under the circumstances.

Dated at Portland, Maine this 29th day of February, 2016.

/s/ Randy J. Creswell
Randy J. Creswell, Esq.
Counsel for Patriarch Partners
Agency Services, LLC

Perkins Thompson, P.A.
One Canal Plaza, PO Box 426
Portland, ME  04112-0426
(207) 774-2635
rcreswell@perkinsthompson.com

---

[4] PPAS (for itself and on behalf of the Lenders) specifically and expressly reserves any and all of its and their rights, interests, or claims with respect to their assets or collateral (as such may remain), or any and all sale proceeds from such assets or collateral, as necessary or appropriate under applicable law in these cases or otherwise.

{P1108916.2}                                -8-

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served on this date true copies of the above Response and this Certificate of Service on each of the parties set forth on the Service List below, via the method indicated.

All other parties listed on the Notice of Electronic Filing have been served electronically on this date.

Dated at Portland, Maine this 29th day of February, 2016.

                              /s/ Randy J. Creswell
                              Randy J. Creswell, Esq.
                              Counsel for Patriarch Partners
                              Agency Services, LLC

Perkins Thompson, P.A.
One Canal Plaza, PO Box 426
Portland, ME  04112-0426
(207) 774-2635
rcreswell@perkinsthompson.com

## Service List

Patriarch Partners Agency Services, LLC (via email only)

{P1108916.2}                              -9-