**LaMONICA HERBST & MANISCALCO, LLP**
*Proposed Counsel to Salvatore LaMonica, as Chapter 7 Trustee*
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
Gary F. Herbst, Esq.
Holly R. Holecek, Esq.
Jacqulyn S. Loftin, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                          Chapter 7

TRANSCARE CORPORATION, et al.,                Case No.: 16-10407 (SMB)
                                                                        (Jointly-Administered)

                             Debtors.
-------------------------------------------------------------x

**MOTION OF CHAPTER 7 TRUSTEE FOR AN ORDER: (I) APPROVING THE
STIPULATION RESPECTING THE SALE OF CERTAIN PERSONAL PROPERTY; (II)
AUTHORIZING THE AUCTION SALES OF CERTAIN PERSONAL PROPERTY; (II)
APPROVING THE SALE AND NOTICE TERMS FOR THE AUCTION SALES OF
CERTAIN PERSONAL PROPERTY; (III) APPROVING THE SALE OF CERTAIN
PERSONAL PROPERTY, FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES, SECURITY INTERESTS AND OTHER INTERESTS TO THE
SUCCESSFUL BIDDERS AT THE AUCTION SALES; (VI) APPROVING THE
EMPLOYMENT OF MALTZ AUCTIONS AS AUCTIONEER TO MARKET AND
PUBLICLY AUCTION CERTAIN PERSONAL PROPERTY; (V)
AUTHORIZING THE TRUSTEE TO DONATE OR OTHERWISE DISPOSE OF
CERTAIN *DE MINIMUS* PERSONAL PROPERTY;
AND (VII) GRANTING RELATED RELIEF**

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE

        Salvatore LaMonica, as interim Chapter 7 Trustee (the "Trustee") for the jointly-

administered estates of TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc.,

TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC

Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland, Inc., TC

Ambulance North, Inc. and TransCare Harford County, Inc. (collectively, the "Debtors"), by his

proposed counsel, LaMonica Herbst & Maniscalco, LLP, submits this motion (the "Motion")

seeking entry of an Order: (i) approving the *Stipulation Respecting the Sale of Certain Personal*

*Property* between the Trustee, Patriarch Partners Agency Services LLC, on behalf of itself and as Administrative Agent ("PPAS"), and Transcendence Transit, Inc. ("Transcendence"), a copy of which is annexed as **Exhibit A** (the "Stipulation"); (ii) authorizing the Trustee to proceed with public auction sales of certain personal property; (iii) approving the terms and conditions of sale (the "Sale Terms") and noticing for the auction sales (the "Notice of Sale"); (iv) approving the sales of certain personal property, free and clear of all liens, claims and encumbrances, security interests and other interests, to the successful bidder(s) at the auction sales; (v) approving the Trustee's employment of Maltz Auctions as his auctioneer to market and publicly auction certain personal property; (vi) authorizing the Trustee to donate or otherwise dispose of certain *de minimus* personal property; and (vii) approving and granting such other, further and different relief as this Court deems just and proper, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      This Motion represents a critical step in the orderly wind down of the Debtors' operations and liquidation of the Debtors' assets. By this Motion, the Trustee seeks authorization to proceed with public auctions sales and approval of the Sale Terms and Notice of Sale to facilitate the sale of certain personal property in accordance with Local Bankruptcy Rule 6004-1 and General Order M-383 dated November 18, 2009 adopting the Amended Guidelines for the Conduct of Asset Sales (the "M-383 Order"). The personal property to be liquidated includes, inter alia, the ambulances, vehicles, machinery, equipment and supplies that were used in the operation of the Debtors' and certain affiliated non-Debtors'[1] business operations (collectively, the "Tangible Personal Property Assets").

---

[1]     The non-Debtors are TC Hudson Valley Ambulance Corp., TC Ambulance Corp. and TransCare Pennsylvania Inc.

2.      PPAS asserts first priority liens on certain of the Tangible Personal Property Assets and, in the days immediately prior to the commencement of these cases, PPAS purported to strictly foreclose on certain of the Tangible Personal Property Assets. In connection therewith, certain of the Tangible Personal Property Assets were then purportedly transferred to Transcendence.

3.      Subject to Court approval, the Trustee, PPAS and Transcendence have entered into the Stipulation, which provides for, inter alia, the consensual sale of, inter alia, the Tangible Personal Property Assets by the Trustee, with 20% of the net sale proceeds (after deducting certain costs and expenses associated with the sale of the Tangible Personal Property Assets) to be retained by the Trustee for the benefit of the Debtors' estates.[2] The Stipulation thus provides a mechanism for the orderly liquidation of the Tangible Personal Property Assets, a sharing of the expenses associated with the sale of the Tangible Personal Property Assets, a division of the net sale proceeds and a reservation of rights.

4.      The Trustee received and reviewed proposals to market and sell the Tangible Personal Property Assets. After reviewing each of the proposals with his counsel, the Trustee selected Maltz Auctions, Inc. d/b/a Maltz Auctions ("Maltz Auctions") as his auctioneer in these cases and, by this Motion, seeks approval to employ Maltz Auctions to market and sell the Tangible Personal Property Assets. Maltz Auctions has agreed to market and publically auction the Tangible Personal Property Assets and to be compensated solely from a 12.5% buyer's

---

[2]      As set forth more fully in the Stipulation, all rights of the parties were reserved with respect to, inter alia, the propriety of the strict foreclosure. The Stipulation merely allows for the orderly liquidation of the Personal Property by the Trustee and a sharing of all of the costs associated therewith without waiving any rights, claims and/or defenses that the parties may have.

premium. As a result, the Debtors' estates will not incur any administrative expenses from Maltz Auctions in connection with the proposed auction sales.

5.       The Debtors and their non-debtor affiliates/subsidiaries are no longer operating[3] and the Tangible Personal Property Assets have value that can be realized through public auction sales. Equally as important, the Debtors' estates are incurring administrative expenses to preserve and maintain the Tangible Personal Property Assets, including the monthly rental costs for where these assets are currently located. To maximize their value, it is essential that the Trustee be authorized to immediately market and publically sell the Tangible Personal Property Assets.

6.       For these and the reasons set forth below, the Trustee respectfully requests that the Court approve the Motion.

## JURISDICTION AND VENUE

7.       This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.       Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9.       The statutory predicates for the relief sought in this Motion include 11 U.S.C. §§ 105, 327, 328, 330, 331, 363, 364 and 506 (the "Bankruptcy Code"), Rules 2002 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 6004-1.

---

[3]       The Trustee notes that, at a hearing held on March 1, 2016, the Court approved the Trustee's motion for authority to wind down the Debtors' estates and to operate on a limited basis as necessary to preserve the CONs (as defined herein). The Trustee is taking all steps necessary to preserve the CONs and nothing contained herein affects the Trustee's right or ability to continue to preserve the CONs in accordance with the hearing held on March 1, 2016.

## BACKGROUND

### A.    The Bankruptcy Cases

10.    On February 24, 2016 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in this Court.

11.    On February 25, 2016, Salvatore LaMonica was appointed as the interim Chapter 7 Trustee of the Debtors' cases and is currently acting in that capacity.

12.    Pursuant to Orders dated March 1, 2016, the Debtors' cases are being jointly administered under case no. 16-10407 (TransCare Corporation).

13.    Prior to the Petition Date, the Debtors were operating in accordance with certain Ambulance Service Certificates issued by the New York State Department of Health and identified as follows: (i) no. 0164 issued to debtor TransCare New York, Inc. d/b/a TransCare for Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk and Westchester counties; (ii) no. 0470 issued to debtor TransCare Westchester, Inc. for Westchester county; (iii) no. 0508 issued to debtor TC Ambulance Group, Inc., d/b/a Mount Sinai Beth Israel for Kings, Queens, Richmond, Bronx, New York counties; (iv) no. 0509 issued to debtor TC Ambulance North, Inc., d/b/a TransCare for Bronx, New York, Queens, Kings and Richmond counties; and (v) no. 0574 issued to TCBA Ambulance, Inc., d/b/a St. Barnabas Hospital Emergency Services for Bronx, Kings, New York, Queens and Richmond counties (collectively, the "Debtors' CONs"). The Trustee believes that the CONs have tremendous value and is taking all steps to preserve and maintain the Debtors' CONs. The Trustee intends to seek, by separate application, authority to market, sell and transfer the Debtors' CONs in accordance with, inter alia, Bankruptcy Code § 363(f) and Article 30 of the Public Health Law of New York State.

B.     **The Tangible Personal Property Assets**

14.     The Debtors' business was to provide emergency medical transportation services to hospitals and communities in New York, including 911/EMS services, basic life support, advanced life support, critical care transport, ambulette and wheelchair van and special venue transportation services. The Debtors also provided non-emergency response services and critical care transfers to and between health care facilities, hospitals, nursing homes and other specialty care facilities.

15.     Since his appointment, the Trustee has taken steps to secure the Debtors' Tangible Personal Property Assets located at the Debtors' premises in New York, Maryland and Pennsylvania. The Tangible Personal Property Assets to be sold consists of the ambulances, vehicles, machinery, equipment, furniture and supplies the Debtors and their non-debtor affiliates/subsidiaries used in the ordinary course of business located at the Debtors' and the non-Debtors' premises located at: (a) 25 14th Street, Brooklyn, New York 11215; (b) 800 Banks Street, Brooklyn, New York 11236; (c) 295 Stanley Avenue, Brooklyn, New York 11207; (d) 1 Metrotech Center, 20th Floor, Brooklyn, New York 11201; (e) 718 South Fulton Avenue, Mt. Vernon, New York 10550; (f) 1125 Desoto Road, Baltimore, Maryland 21223; (g) 400 Seco Road, Monroeville, Pennsylvania 15146; (h) Maltz Auctions; (i) 10 South White Street, Poughkeepsie, New York 12601; and (j) 102 Old Route 6, Carmel, New York 10512 (collectively, the "Premises").[4]

---

[4]     The Trustee notes that certain personal property located at the Premises may be owned by third parties who are not affiliated with the Debtors and who are not parties to the Stipulation. Prior to the proposed auction sales, the Trustee will either negotiate with such third parties for the return of such personal property, or negotiate the terms of the consensual sale of such personal property by Maltz Auctions.

16.     A schedule of the ambulances and vehicles to be included in the sale is annexed as **Exhibit B**. There are certain additional ambulances, vehicles, machinery and equipment not listed on **Exhibit B,** which personal property was leased by the Debtors or their non-debtor affiliates/subsidiaries. Prior to the proposed auction sales, the Trustee will either negotiate with the lessors for the return of the leased ambulances, vehicles, machinery and equipment, or negotiate the terms of the consensual sale of the leased ambulances, vehicles, machinery and equipment by Maltz Auctions.

**C.      Secured Indebtedness On The Tangible Personal Property Assets**

17.     PPAS asserts a first priority lien and security interest in and to, _inter alia_, the Tangible Personal Property Assets. Pursuant to the Stipulation, PPAS and Transcendence have consented to the sale of the Tangible Personal Property Assets and have agreed to a carve-out of 20% from PPAS's secured lien (after deducting certain costs and expenses associated with the sale) for the Debtors' estates. See **Exhibit A** at 4-5, ¶¶ 1-3.

18.     Wells Fargo Bank, N.A. ("Wells Fargo") asserts a second priority lien and security interest in and to, _inter alia_, the Tangible Personal Property Assets. Counsel to the Trustee has communicated with counsel to Wells Fargo regarding the Trustee's proposed sale of the Tangible Personal Property Assets. Wells Fargo indicated that it has no objection to the proposed sale of the Tangible Personal Property Assets, _provided that_ Wells Fargo's liens and security interests attach to the net proceeds of the sale in their respective order and priority as of the Petition Date.

**D.      The Stipulation**

19.     Immediately prior to the Petition Date, PPAS (acting as the administrative agent for various pre-Petition Date secured lenders) purported to foreclose their interests in, _inter alia_, all of the Debtors' personal property, vehicles and certain contracts (the "Foreclosed Personal

Property Assets"). Among other assets, the Foreclosed Personal Property Assets were then purportedly transferred to Transcendence. On or about February 26, 2016, however, Transcendence ceased operating. Certain of the Foreclosed Personal Property Assets are located at the Debtors' premises in New York, Maryland and Pennsylvania.

20.    The Trustee disputes the validity of the pre-Petition Date foreclosure and maintains that the Foreclosed Personal Property is property of the Debtors' estates. PPAS and Transcendence maintain that the Foreclosed Personal Property Assets are not property of the Debtors' estates. Nevertheless, the Trustee, PPAS and Transcendence agree that the public auction sale of the Foreclosed Personal Property Assets, with a carve-out for the estate and a reservation of the parties' respective rights with respect to, inter alia, the pre-Petition Date foreclosure, is in the best interests of the Debtors' estates and their creditors. Accordingly, the Trustee, PPAS and Transcendence entered into the Stipulation, which provides for, inter alia, the consensual sale of the Foreclosed Personal Property Assets. See **Exhibit A** at 4, ¶ 1.

21.    The Stipulation provides that the following amounts will be carved-out from the gross proceeds of the Foreclosed Personal Property Assets (the "Carve-Out"): (a) sums sufficient to satisfy, in full, any and all costs incurred by the Trustee in connection with the preservation and protection of the Foreclosed Personal Property Assets; (b) sums sufficient to satisfy, in full, any and all costs incurred by the Trustee in connection with the sale of the Foreclosed Personal Property Assets, including: (i) the reasonable fees and expenses of the Trustee's retained counsel (as approved by the Court); and (ii) the reasonable commissions and expenses of the Trustee's auctioneers/liquidators (as approved by the Court). See **Exhibit A** at 5, ¶ 2.

22.    In addition to the Carve-Out, the Stipulation provides that: (a) 20% of the net proceeds from the sale of the Foreclosed Personal Property Assets will be carved-out for the benefit of the Debtors' estates (the "Creditor Carve-Out"); and (b) the Trustee shall be authorized

to immediately pay to PPAS 80% of the net sale proceeds from the sale of the Foreclosed Personal Property Assets without further Order of the Court. See **Exhibit A** at 5, ¶ 3.

23.    Further, the Trustee agreed to seek Court approval for authority to segregate 10% of the Creditor Carve-Out for the payment of pre-petition, Bankruptcy Code § 507(a)(4) claims (the "Employee Wage Claim Fund"). See **Exhibit A** at 6, § 5.

24.    Importantly, the Stipulation contemplates the Trustee's sale of certain non-Debtor Ambulance Service Certificates issued by the New York State Department of Health and identified as follows: (i) no. 0667 issued to non-debtor TC Hudson Valley Ambulance Corp., d/b/a TransCare for Rockland, Orange, Ulster, Sullivan, Dutchess, Putnam, Westchester and Delaware counties; and (ii) no. 0510 issued to non-debtor TC Ambulance Corp., d/b/a Metro EMS for Bronx, New York, Queens, Kings, Richmond and Westchester counties (together, the "Non-Debtor CONs" and, together with the Debtors' CONs, the "CONs"). See **Exhibit A** at 4, ¶ 1. The Stipulation provides that the proceeds from the anticipated sale[5] of the CONs will be retained by the Trustee on behalf of the Debtors' estates, subject to any and all liens, claims, security interests and/or ownership interests (if any) of PPAS, Wells Fargo and Transcendence, which shall attach to the proceeds of sale attributable to the CONs in the same right, interest and priority as they existed prior to the Petition Date. See **Exhibit A** at 5-6, ¶ 4.

## RELIEF REQUESTED AND BASIS FOR RELIEF REQUESTED

25.    By this Motion, the Trustee seeks an Order: (a) approving the Stipulation; (b) authorizing the Trustee to proceed with public auction sales of the Tangible Personal Property Assets; (c) approving the Sale Terms and Notice of Sale; (d) approving the sales of the Tangible

---

[5]    As set forth above, the Trustee intends to move by separate application for authority to market, sell and transfer the CONs in accordance with, inter alia, Bankruptcy Code § 363(f) and Article 30 of the Public Health Law of New York State.

9

Personal Property Assets, free and clear of all liens, claims and encumbrances, security interests and other interests, to the successful bidder(s) at the auction sales; (e) approving the Trustee's employment of Maltz Auctions as his auctioneer to market and publicly auction the Tangible Personal Property Assets; (f) authorizing the Trustee to donate or otherwise dispose of certain *de minimus* personal property; and (g) approving and granting such other, further and different relief as this Court deems just and proper.

26.     As set forth more fully below, there are several reasons why a sale of the Tangible Personal Property Assets now is appropriate. First, the Debtors are no longer operating and the Tangible Personal Property Assets are not required by the Debtors. Second, the estates are incurring expenses in connection with the preservation of the Tangible Personal Property Assets, and it is prudent to liquidate such assets and, when and as necessary and appropriate, abandon the various Premises. Third, the Stipulation provides for a Carve-Out and Creditor Carve-Out in connection with the sale of the Foreclosed Personal Property Assets while simultaneously preserving, inter alia, all of the Trustee's rights, claims and defenses against Patriarch and Transcendence, which clearly benefits the Debtors' estates.

## I.     **The Stipulation Should Be Approved.**

27.     The Trustee submits that the sale of the Foreclosed Personal Property and Non-Debtor CONs in accordance with the Stipulation will provide the estates with an opportunity to realize the greatest value from these personal property assets. As set forth above, PPAS maintains that the Foreclosed Personal Property and Non-Debtor CONs are not property of the Debtors' estates. Moreover, PPAS asserts a first priority secured lien on the Tangible Personal Property Assets. The Stipulation provides an avenue for the estates to realize value from the Foreclosed Personal Property and the Non-Debtor CONs, while preserving the Trustee's right to challenge, inter alia, the validity of the pre-Petition Date foreclosure.

28.    The Debtors' estates are incurring expenses in connection with the preservation and maintenance of the Tangible Personal Property Assets. The monthly base rent for the Debtors' premises aggregates approximately $290,000.00. The Trustee has required, inter alia, the assistance of security personnel and locksmiths to secure and preserve the Tangible Personal Property Assets (24/7 security has been required at the Mt. Vernon premises and the 14th Street, Brooklyn premises at the rate of $47/hour and locks were changed at the Debtors' premises in Brooklyn, Mt. Vernon, Baltimore and Pittsburgh). The Stipulation provides for the Carve-Out for, inter alia, the costs associated with the preservation and sale of the Foreclosed Personal Property Assets at all of the Premises, as well as the Creditor Carve-Out for the estates from the gross sale proceeds of the Foreclosed Personal Property. Thus, the estates benefit and significant disputes between the Trustee, PPAS and Transcendence are preserved for another day.

29.    At the request of PPAS and the Lenders (as defined in the Stipulation), the Trustee agreed to seek Court approval for authority to segregate 10% of the Creditor Carve-Out solely for the payment of pre-petition, employee claims entitled to priority under Bankruptcy Code § 507(a)(4) (the "Employee Claims"). See **Exhibit A** at 6, ¶ 5. The Debtors' cases were filed on an emergency basis after 10:00 p.m. on the Petition Date and, the following day, the Debtors' operations had to abruptly shut down. The Debtors employed approximately 1,800 people, many of whom provided essential public services to New York City and the surrounding areas. The Debtors failed to make payroll in the weeks leading up to the Petition Date and, upon information and belief, will be Employee Claims asserted against the Debtors' estates.[6] Based upon the above, the Trustee does not object to the segregation of the Employee Wage Claim Fund from the Creditor Carve-Out.

---

[6]    A review of the claims registers in the Debtors' cases reveals that a majority of the claims filed against the Debtors' estates to date (even though no bar dates have been set) were filed by former employees.

30.    For these reasons, the Trustee, in the exercise of his reasonable business judgment, submits that the Stipulation is in the best interests of the Debtors' estates and recommends its approval.

## II.    The Auction Sales Of The Tangible Personal Property Assets Represents A Reasonable Exercise Of The Trustee's Business Judgment And Should Be Approved.

31.    Bankruptcy Code § 363 provides, in relevant part, that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). The terms of such sale is generally within the sound discretion of the debtor, or if applicable the trustee. See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.), 973 F.2d 141, 145 (2d Cir. 1993); In re Dial-A-Mattress Operating Corp., 2009 Bankr. LEXIS 1801, at *12 (Bankr. E.D.N.Y. June 24, 2009) ("The business judgment test is the standard for Section 363 sales in this Circuit." (citations omitted)); In re Hirsch, 360 B.R. 43, 45–46, 48, 50 (Bankr. E.D.N.Y. 2007) (requiring "existence of 'a good business reason to grant such an application'" (quoting In re Lionel Corp., 722 F.2d at 1071)); In re Thomson McKinnon Sec., Inc., 120 B.R. 301, 307–08 (Bankr. S.D.N.Y. 1990). As recognized by the United States Court of Appeals for the Second Circuit in Lionel Corp., a court may approve a § 363 application after expressly determining from the evidence presented that a good business reason exists to grant such application. 722 F.2d 1063.

32.    In addition, § 105(a) of the Bankruptcy Code grants the Court the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). This provision is "the basis for a broad exercise

of power [by the Court] in the administration of a bankruptcy case. 2 COLLIER ON BANKRUPTCY

¶ 105.01 (Alan N. Resnick and Henry J. Sommer. eds., 16th ed.).

33.    In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the

ordinary course of business may be by private sale or by public sale. In practice, the preferred

method is to conduct a public sale because a public sale will most often result in a greater

number of potential bidders in the shortest amount of time. That is, in order to determine that a

private sale has yielded the highest or best offer, property generally must remain on the market

for a significantly longer period of time than when offered at a public sale.

34.    Local Rule 6004-1(a) further provides that:

The trustee may sell property of the estate that the trustee reasonably believes has an
aggregate gross value of no more than $10,000 by public or private sale on seven days'
written notice to any party with an interest in such property, the landlord of the premises
on which the property is located, and such other parties as the Court may direct. The
notice of any proposed sale of property of the estate having an aggregate gross value of at
least $2,500 shall include the time and place of the proposed sale, whether the sale will be
public or private, and the terms and conditions of the proposed sale.


35.    The M-383 Order supplements the requirements of Bankruptcy Code § 363,

Bankruptcy Rule 6004 and Local Rule 6004-1 and provided, in pertinent part, that:

When multiple asset sales over time are expected, a [trustee] should consider seeking
Court approval of global bidding procedures to avoid the need to obtain Court approval
of procedures for each such sale. Similarly, the [trustee] should consider seeking Court
approval of global notice and other appropriate procedures to facilitate sales of assets of
limited value or *de minimis* sales that do not warrant an auction or a separate motion for
each sale. What constitutes a *de minimis* sale will depend on the facts of each case.
See Local Rule 6004-1.

36.    Here, the Trustee determined, in his sound business judgment, that selling the

Tangible Personal Property Assets outside the ordinary course of business at public auction sales

is justified, necessary and appropriate. Indeed, compelling business justifications exist for the

approval of the proposed auction sales of the Tangible Personal Property Assets as set forth

herein. Given that the Debtors are no longer operating and that the Tangible Personal Property Assets are not necessary for any reorganization, the prudent course is to proceed with their sale promptly.

37.     However, given the nature of the Tangible Personal Property Assets and the quantity of assets, a separate motion or notice for each sale is imprudent and would deplete any potential value that can be realized by the liquidation of the Tangible Personal Property Assets for the Debtors' estates and their creditors. The assets to be sold primarily consist of used vehicles, machinery, equipment and supplies that were utilized in the operation of the Debtors' business. Individually, each asset arguably has *de minimus* value, especially compared to the expense of preserving and protecting all of the assets to be sold. Given the nature and quantity of the Tangible Personal Property Assets, the Trustee submits that a separate motion or notice for each individual sale is not warranted.

38.     The Trustee has conferred with Maltz Auctions and intends to conduct public auction sales of the Tangible Personal Property Assets on the following dates at the addresses listed: (a) on April 20, 2016 at 25 14th Street, Brooklyn, New York 11215; (b) on May 4, 2016 at 718 South Fulton Avenue, Mt. Vernon, New York 10550; (c) on May 6, 2016 at 10 South White Street, Poughkeepsie, New York 12601; (d) on May 11, 2016 at 400 Seco Road, Monroeville, Pennsylvania 15146; (e) on May 12, 2016 at 1125 Desoto Road, Baltimore, Maryland 21223; and (f) on a date (or dates) to be determined at Maltz Auctions at 39 Windsor Place, Central Islip, New York 11722[7] (collectively, the "Auction Sales").[8]

---

[7]     The Trustee has located and retrieved certain vehicles titled in the Debtors' names from locations other than the Premises (including, but not limited to, hospitals and nursing homes) and more may be discovered prior to the scheduled Auction Sales. Public auction sales of these vehicles will be conducted at Maltz Auctions on a date (or dates) to be determined by the Trustee. Notice of such auction sales will be provided in accordance with the notice provisions outlined in § III b. of this Motion.

14

39.      Notice of the Auction Sales will be provided substantially in compliance with Bankruptcy Rules 6004(a) and (c) and 2002(a)(2) (the "Notice of Sale") to all parties who have filed a notice of appearance in the Debtors' cases, all known secured creditors and/or lien holders, all known parties with an interest in the Tangible Personal Property Assets (which list currently includes over 445 parties) and the Office of the United States Trustee.[9]

40.      The Auctions Sales will also be advertised online and in print. It is anticipated that Maltz Auctions has or will cause notices to be published in *The New York Times* and relevant trade publications (either in print or electronically), including *Fire Trader* and *EMS World.* In addition, Maltz Auctions has advised the Trustee that they will send direct mailings to targeted recipients, engage in telemarketing campaigns and engage a public relations company to assist with the promotion of the Auction Sales. The Trustee believes that the marketing and advertising campaign proposed by Maltz Auctions, for which the estates will bear no costs, is designed to ensure that the highest and best offers for the Tangible Personal Property Assets are received.

41.      The Tangible Personal Property Assets shall be sold "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness

---

[8]      The Debtors' offices at 1 Metrotech Center, 20th Floor, Brooklyn, New York 11201 are currently being used by Wells Fargo in connection with the collection of the Debtors' accounts receivable. In consultation with Maltz Auctions, the Trustee may schedule a public auction sale of the Tangible Personal Property Assets located in the offices, which consists primarily of desks, office supplies and related personal property. Notice of any such sale will be provided in accordance with ¶ 39 of this Motion.

[9]      The Debtors have filed a Consolidated List of Creditors/Master Mailing Matrix (the "Matrix") but have not filed any schedules. See, e.g., Case No. 16-10407, Dkt. No. 5. Counsel to the Trustee previously conferred with Debtors' counsel and Debtors' counsel indicated that every entity that appeared in the Debtors' accounts payable system was included on the Matrix. Debtors' counsel indicated that, because they could not determine which entities were owed money from the Debtors, all parties were included for noticing purposes. Given the amount of parties listed on the Matrix (approximately 4,000) and Debtors' counsel's representations (and subject to Court approval), the Trustee does not intend to serve Notices on every party listed on the Matrix.

for a particular purpose, and without warranty or agreement as to the condition of such personal property.

42.    At the Trustee's discretion, the Tangible Personal Property Assets will be offered for sale in bulk, in lots and/or bidder's choice. The Trustee will determine the highest or best bid (or bids) for the Tangible Personal Property Assets. After the Auction Sales, the Trustee may seek the entry of Orders confirming the results of the Auction Sales, but the Trustee shall not be required to seek the entry of any such Orders.

43.    After the Auction Sales, title to the Tangible Personal Property Assets will be transferred to the successful bidder(s) pursuant to Bills of Sale. Maltz Auctions shall collect any applicable sales tax from buyers, and prepare all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable sales taxes to the appropriate taxing authorities, and Maltz shall process all of the foregoing. Maltz Auctions shall pay the same to the appropriate taxing authorities in accordance with applicable law.

44.    In accordance with Local Rule 6004-1(f), within 21 days of the Auction Sales, Maltz Auctions shall file a report with the Court and transmit a copy of the report to the United States Trustee.

45.    For these reasons, the Trustee seeks approval of global notice and other appropriate procedures set forth herein to facilitate the Auction Sales of the Tangible Personal Property Assets. The proposed advertising and marketing campaign, which will be at no cost to the estates, will also ensure that the highest and best offers for the Tangible Personal Property Assets will be received. The Trustee submits that the proposed sale process and global noticing process is reasonable, necessary and appropriate, and will enable him to receive the maximum value for the Tangible Personal Property Assets.

46.     Accordingly, the Trustee submits that there is cause for the Court to grant the

relief requested herein.

## III.   The Sale Terms And Notice of Sale Should Be Approved

### a.     The Sale Terms

47.     As set forth above, the salient provisions of the Sale Terms are as follows:

a. The Tangible Personal Property Assets shall be sold "as is", "where is", without any representations of any kind or nature whatsoever, including as to merchantability or fitness for a particular purpose, and without warranty or agreement as to the condition of such personal property.

b. At the Trustee's discretion, the Tangible Personal Property Assets will be offered for sale in bulk, in lots and/or bidder's choice. The Trustee will determine the highest or best bid (or bids) for the Tangible Personal Property Assets. After the Auction Sales, the Trustee may seek the entry of Orders confirming the results of the Auction Sales, but the Trustee shall not be required to seek the entry of any such Orders.

c. After the Auction Sales, title to the Tangible Personal Property Assets will be transferred to the successful bidder(s) pursuant to Bills of Sale.

d. Maltz Auctions shall collect any applicable sales tax from buyers, and prepare all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable sales taxes to the appropriate taxing authorities, and Maltz shall process all of the foregoing.

48.     The Trustee submits that the Sale Terms are reasonably designed to ensure that the Debtors' estates receive the maximum benefit available from the sale of the Tangible Personal Property and therefore warrant Court approval.

### b.     The Notice of Sale

49.     Pursuant to Bankruptcy Rules 2002(c) and 6004(a), the Trustee is required to give 21 days' notice of any proposed sale of property not in the ordinary course of business to the Debtors and all creditors. See FED. R. BANKR. P. 2002(c) and 6004(a). Bankruptcy Rule 2002(c) provides that such notice must include the time and place of any auction, a sale hearing, and the time fixed for objections to the sale. See FED. R. BANKR. P. 2002(c). The M-383 Order provides

17

that the statutory notice period should not be shorted for notice of the actual sale without a

showing of good cause. <u>See</u> M-383 Order at 14, ¶ 2.

50.      Here, the Trustee proposes to serve a Notice of Sale, substantially in the form

annexed as **<u>Exhibit C</u>**, not less than twenty-one (21) days prior to the first scheduled Auction

Sale on April 20, 2016 (<u>i.e.</u>, by March 30, 2016) upon the following parties:

   a.   the Debtors, through their counsel

   b.   the non-Debtors (TC Hudson Valley Ambulance Corp., TC Ambulance Corp. and
        TransCare Pennsylvania Inc.);

   c.   the United States Trustee;

   d.   entities who have requested notice under Bankruptcy Rule 2002;

   e.   entities who filed proofs of claim with the Court in the Debtors' cases[10];

   f.   all entities known or reasonably believed to have asserted a lien, encumbrance or
        claim or other interest in any of the Tangible Personal Property Assets;

   g.   all affected federal, state and local regulatory and taxing authorities, including the
        Internal Revenue Service; and

   h.   all entities known or reasonably believed to have expressed an interest in the
        Tangible Personal Property Assets

(collectively, the "<u>Notice Parties</u>").

51.      As reflected in the Notice of Sale annexed as **<u>Exhibit C</u>**, it will advise the Notice

Parties of the following: (a) the dates, times and locations of the Auction Sales; (b) the Sale

Terms, including that the sale will be free and clear of all liens, claims, interests and other

encumbrances; and (c) a reasonably specific description of the Tangible Personal Property Assets

to be sold.

---

[10]      As set forth above, the Debtors have not filed schedules in these cases and the Matrix includes over 4,000
entities that may or may not have claims against the Debtors' estate. The Trustee submits that service of the
Notice of Sale upon the Notice Parties substantially complies with Bankruptcy Rule 2002 and should
therefore be authorized and approved.

52.     The Trustee notes that Maltz Auctions intends to publish the Notice of Sale on its website and, as disclosed above, Maltz Auctions has or will market the Auction Sales of the Property through electronic mail distribution lists, print and regular mail campaigns.

53.     The Trustee submits that the Notice of Sale as proposed substantially complies with Bankruptcy Rule 2002 and the M-383 Order, and constitutes good and adequate notice of the Auction Sales. Therefore, the Trustee respectfully requests that the Court approve the proposed Notice of Sale.

## IV.    The Tangible Personal Property Should Be Sold Free And Clear Of Liens.

54.     Bankruptcy Code § 363 permits the sale of assets to be free and clear of liens, claims and interests of an entity in such property if: (a) applicable state law will permit the sale; (b) such entity consents; (c) the price at which the assets is being sold exceeds the liens, claims and interests; (d) the security interest in the Tangible Personal Property Assets is disputed; or (e) the entity with an interest in the asset being sold could be compelled in a legal or equitable proceeding to accept a money satisfaction of its interest in and to the Tangible Personal Property Assets. See 11 U.S.C. § 363(f).

55.     Here, there are several liens, claims and encumbrances asserted against the Tangible Personal Property Assets, including those asserted by PPAS and Wells Fargo.

56.     Pursuant to the Stipulation, PPAS and Transcendence have consented to the Trustee's sale of, inter alia, the Foreclosed Personal Property Assets in accordance with Bankruptcy Code § 363, free and clear of any and all liens, claims, encumbrances, interests or adverse claims to title, of whatever kind or nature (collectively, the "Liens"), with such Liens, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Petition Date. Likewise, any Liens of Wells Fargo shall attach to the proceeds of sale in such order and priority as they existed immediately prior to the Petition Date.

19

57.     Based on the foregoing, the Trustee believes that he will be able to satisfy to requirements of Bankruptcy Code § 363(f).

**V.      The Trustee's Employment Of Maltz Auctions Should Be Approved.**

58.     By this Motion, the Trustee also seeks the entry of an Order approving Maltz Auctions' employment as his auctioneer to conduct the Auction Sales of the Tangible Personal Property Asserts. In support of Maltz Auctions' employment, the affidavit of Richard B. Maltz (the "Maltz Affidavit") is annexed as **Exhibit D**.

59.     Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a). Maltz Auctions' fees and terms of employment, as set forth herein and the Maltz Affidavit, are reasonable given the scope and extent of the services Maltz Auctions will render.

**A.   Maltz Auctions' Qualifications**

60.     Maltz Auctions has extensive experience conducting public liquidation sales of real and personal property. As set forth in the Maltz Affidavit, Maltz Auctions is a full service auction, real estate brokerage, appraisal, consulting, liquidation and management firm whose senior management team has been engaged in these fields for in excess of 50 combined years and has extensive experience selling assets similar to the assets contemplated for sale in these cases. Maltz Auctions is bonded in the Southern and Eastern Districts of New York, and the requisite bond is on file with the Office of the United States Trustee for the Southern District of New York.

61.     The Trustee submits that Maltz Auctions is well-qualified to act as his auctioneer to market and sell the Tangible Personal Property Assets.

### B. **Maltz Auctions' Disinterestedness**

62.     As evidenced by the Maltz Affidavit, Maltz Auctions has represented that it does not hold or represent any interest adverse to the Debtors' estates. Further, Maltz Auctions has represented that it has no connection with the Debtors, the Debtors' creditors, other parties in interest, the United States Trustee or any person employed by the United States Trustee.

63.     Therefore, the Trustee believes that Maltz Auctions is a "disinterested person" as contemplated by Bankruptcy Code § 327(a) and requests that Maltz Auctions' employment be approved.

### C. **Maltz Auctions' Fees And Expenses**

64.     As set forth above, Maltz Auctions' compensation shall be limited to a 12.5% buyer's premium, which shall be retained by Maltz Auctions from the Auction Sale proceeds. Maltz Auctions shall not be required to submit a further application to the Court, and Maltz Auctions shall not be entitled to further compensation from the Debtors' estates.

65.     For these reasons, the Trustee requests that Maltz Auctions' employment be approved by the Court.

## VI.    **The Trustee Should Be Authorized To Donate Or Otherwise Dispose Of Certain *de minimus* And Miscellaneous Personal Property.**

66.     In consultation with Maltz Auctions, the Trustee may determine that certain of the Tangible Personal Property Assets at the Premises has *de minimus* value. Accordingly, the Trustee seeks authority to donate or otherwise dispose of any such personal property without further Order of the Court, in connection with the liquidation of the Debtors. Should any such property be donated, it is anticipated that it will be to an entity either in the health care field or to an entity in the communities the Debtors served.

## VII.     The Trustee Should Be Granted Related Relief.

67.     Pursuant to Bankruptcy Rule 6004(h), all orders authorizing the sale of property pursuant to Bankruptcy Code § 363 are automatically stayed for fourteen (14) days after entry of the order, unless otherwise ordered by the Court. FED. R. BANKR. P. 6004(h). The stay period is intended to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to FED. R. BANKR. P. 6004(h).

68.     Although little guidance is provided by either Bankruptcy Rule 6004(h) or the Advisory Committee Notes as to when a court should "order otherwise", it has been suggested that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." See 10 COLLIER ON BANKRUPTCY § 6004.09 (Lawrence P. King, et al. eds, 15th ed. rev. rel. 2003). Colliers also proposes that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay pending such appeal. Id.

69.     Here, the Trustee respectfully requests that the Court waive the 14-day stay period required under Bankruptcy Rule 6004(h). This relief is both necessary and appropriate under the circumstances of this case given the nature of the assets to be sold and the proposed Notice of Sale procedures set forth herein. Indeed, in the event the Motion is approved, the Trustee intends to proceed with the Auctions Sales on April 20, May 4, May 6, May 6, May 11 and May 12, 2016.

70.     Pursuant to the M-383 Order, the Trustee is required to highlight any "extraordinary provisions" in a separate section of a motion seeking to sell estate assets. The Trustee submits that there are no "extraordinary provisions" with respect to the proposed Auction Sales of the Tangible Personal Property that have not otherwise been highlighted herein.

22

## NOTICE AND NO PRIOR REQUEST

71.     By separate application, the Trustee will seek the entry of an Order scheduling a

hearing on shortened and limited notice of this Motion.

72.     No previous request for the relief sought herein has been made by the Trustee to

this or any other Court.

**WHEREFORE** the Trustee respectfully requests that the Court grant the relief requested

herein and such other and further relief as it deems just and proper.

Dated: March 17, 2016
      Wantagh, New York       **LaMONICA HERBST & MANISCALCO, LLP**
                            Proposed Counsel to Salvatore LaMonica, as Trustee

                  By:     *s/ Gary F. Herbst*
                          Gary F. Herbst, Esq.
                          Holly R. Holecek, Esq.
                          Jacqulyn S. Loftin, Esq.
                          3305 Jerusalem Avenue, Suite 201
                          Wantagh, New York 11793
                          Telephone: (516) 826-6500