**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

In re:

TRANSCARE CORPORATION, *et al*.

Debtors.

Chapter 7

Case No. 16-10407 (SMB)
Jointly Administered

**PATIENT CARE OMBUDSMAN**

**<u>FIRST REPORT TO THE COURT</u>**

May 31, 2016

Lucy L. Thomson
Patient Care Ombudsman

The Willard; Suite 400
1455 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(703) 798-1001
lucythomson1@mindspring.com

**I.      Patient Care Ombudsman Report to the Court**

Pursuant to Bankruptcy Code section 333(b), Lucy L. Thomson, the Patient Care Ombudsman ("Ombudsman") appointed in this case,[1] submits this Report to advise the Court on the issues related to the operation of the Debtors' three ambulances.

Section 333(b) of the Bankruptcy Code provides that an Ombudsman appointed under subsection (a) shall—

> (1) monitor the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians;
>
> (2) not later than 60 days after the date of appointment, and not less frequently than at 60-day intervals thereafter, report to the court after notice to the parties in interest, at a hearing or in writing, regarding the quality of patient care provided to patients of the debtor; and
>
> (3) if such ombudsman determines that the quality of patient care provided to patients of the debtor is declining significantly or is otherwise being materially compromised, file with the court a motion or a written report, with notice to the parties in interest immediately upon making such determination.

*Summary*—The Debtors provided emergency medical transportation services to hospitals and communities in New York. After the Debtors filed for bankruptcy, the Trustee was authorized by the Court to, *inter alia*, operate and/or designate an operator to maintain the

---

[1] Pursuant to the Court's Consent Order Directing the Appointment of a Patient Care Ombudsman Under 11 U.S.C. § 333 dated March 29, 2016 [Dkt. No. 54], the United States Trustee appointed Lucy L. Thomson as the Patient Care Ombudsman in this case [Dkt. No. 70]. The Consent Order provides that "the Ombudsman may review patient records, including but not limited to confidential records, as necessary and appropriate to discharge the Ombudsman's duties and responsibilities under this Order ("Records")" provided that she protect the confidentiality of such Records.

Ambulance Service Certificates (the "CONs")[2], which must be preserved in order to maintain their transferability [Dkt. Nos. 51 and 125]. Pursuant to a services agreement with the Trustee, SeniorCare EMS, a licensed ambulance operator in New York, assumed operation of the three ambulances, which transported 21 patients in the New York City area during March, April, and May 2016. After investigation, the Ombudsman has found no evidence that the quality of patient care provided to patients of the Debtors has "declined significantly or is otherwise being materially compromised."

## II. Background

On February 24, 2016, TransCare Corporation, TransCare New York, Inc., TransCare ML, Inc., TC Ambulance Group, Inc., TransCare Management Services, Inc., TCBA Ambulance, Inc., TC Billing and Services Corporation, TransCare Westchester, Inc., TransCare Maryland, Inc., TC Ambulance North, Inc. and TransCare Harford County, Inc. (collectively, the "Initial Debtors") each filed voluntary petitions for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On April 25, 2016, TC Ambulance Corporation and TC Hudson Valley Ambulance Corp. (the "Additional Debtors" and, together with the Initial Debtors, the "Debtors") each filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court.

On February 25, 2016, Salvatore LaMonica was appointed as the interim Chapter 7 Trustee of the Debtors' cases and is currently acting in that capacity.

The Debtors, operating as TransCare Corporation, provided emergency medical

---

[2] Certificate of Need (CON) is a process defined in N.Y. State Public Health Law Article 30, section 3005, whereby an entity that wishes to operate an ambulance service makes application to its local Regional EMS Council (REMSCO) for a determination of public need, prior to NYS DOH BEMS granting of a certificate of operating authority.

3

transportation services to hospitals and communities in New York, including 911/EMS services, basic life support, advanced life support, critical care transport, ambulette and wheelchair van and special venue transportation services.  They also provided non-emergency response services and critical care transfers to and between health care facilities, hospitals, nursing homes and other specialty care facilities.

**III.    Ambulance Service Certificates Issued by New York State**

Prior to February 24, 2016, the Initial Debtors were operating in accordance with certain Ambulance Service Certificates issued by the New York State Department of Health and identified as follows:

(i) No. 0164 issued to debtor TransCare New York, Inc. d/b/a TransCare for Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk and Westchester counties;

(ii) No. 0470 issued to debtor TransCare Westchester, Inc. for Westchester county;

(iii) No. 0508 issued to debtor TC Ambulance Group, Inc., d/b/a Mount Sinai Beth Israel for Kings, Queens, Richmond, Bronx, New York counties;

(iv) No. 0509 issued to debtor TC Ambulance North, Inc., d/b/a TransCare for Bronx, New York, Queens, Kings and Richmond counties; and

(v) No. 0574 issued to TCBA Ambulance, Inc., d/b/a St. Barnabas Hospital Emergency Services for Bronx, Kings, New York, Queens and Richmond counties (collectively, the "Initial Debtors' CONs").

Prior to February 29, 2016, the Additional Debtors were operating in accordance with certain Ambulance Service Certificates issued by the New York State Department of Health and identified as follows:

(vi) No. 0667 issued to non-debtor TC Hudson Valley Ambulance Corp., d/b/a

4

TransCare for Rockland, Orange, Ulster, Sullivan, Dutchess, Putnam, Westchester and Delaware counties; and

(vii) No. 0510 issued to non-debtor TC Ambulance Corp., d/b/a Metro EMS for Bronx, New York, Queens, Kings, Richmond and Westchester counties (together, "Additional Debtors' CONs" and, together with the Initial Debtors' CONs, the "CONs").

The CONs must be preserved in order maintain their transferability.[3] By Order dated March 25, 2016 (the "721 Order") [Dkt. No. 51], as extended by Order dated April 29, 2016 [Dkt. No. 125], the Trustee was authorized to, *inter alia*, operate and/or designate an operator to maintain the CONs.

The Trustee entered into a services agreement with SeniorCare EMS Inc., d/b/a SeniorCare ("SeniorCare"). Pursuant to the agreement, SeniorCare, a licensed ambulance operator in New York State, agreed to operate certain ambulances of the Debtors under the CONs a minimum of one call every 30 days within the designated license area. Established in 2005, SeniorCare is the largest commercial ambulance company in New York, operating 171 ambulances. The company's place of business is 700 Havemeyer Ave, Bronx, N.Y. 10473. It maintains a website at www.seniorcareems.com.

## IV. SeniorCare Operation of the TransCare Ambulances

In order to investigate the operation of the Debtors' three ambulances and the patient care provided, the Ombudsman interviewed Leo Marquez, SeniorCare Chief of Operations, and reviewed the Ambulance Call Reports (ACRs) for the transport services provided in March,

---

[3] Article 30, section 3010(4) of the Public Health Law of New York State provides as follows:
  No ambulance service certificate of an ambulance service which has discontinued operations for a continuous period in excess of thirty days shall be transferable without the approval of the appropriate regional council.
NY PUB HEALTH § 3010(4).

April, and May 2016.

The Trustee contracted with SeniorCare to run the ambulances on a mutually agreed upon schedule beginning with the month of March and continuing through the months following. The Debtors' vehicles are identified as follows:

> VEHICLE-901
> PLATE 18498ET
> VIN 1FDSS34P79DA72262
>
> VEHICLE-921
> PLATE 18585ET
> VIN 1FDSS34P49DA77595
>
> HV VEHICLE-610
> PLATE 14380ET
> IN 1FDWE35P36DA19464

*Compliance with State and Regional Requirements*—Each vehicle is a certified ambulance service pursuant to New York State Emergency Services Code Part 800[4]. Part 800 provides requirements for Emergency Medical Services Personnel (§§ 800.6-20) and Certified Ambulance Services (§§ 800.21-26). The Regional EMS Council (REMSCO) issues licenses for operation of the ambulances in specified jurisdictions in the New York City area. SeniorCare is licensed in multiple jurisdictions, including New York City, and Nassau, Suffolk and Westchester Counties. New York State Department of Health representatives conduct scheduled and random inspections of ambulance operations.

According to Mr. Marquez, SeniorCare meets all New York State and REMSCO requirements to operate ambulances, including vehicle operations and maintenance, equipment, personnel certification and training, inspections, insurance, reporting, etc. The Debtors' ambulances operated by SeniorCare are certified to provide both emergency and transport

---

[4] Public Health Law, Article 30, Emergency Medical Services; State Emergency Medical Services Code, Part 800, Emergency Medical Services (2015), *available at*
http://www.health.ny.gov/professionals/ems/public_health_law/part_800.pdf.

services. All ambulances are equipped with basic life support and are staffed with Emergency Medical Technicians (EMTs). There are no narcotics on board any of the three vehicles.[5]

*Transport Services Provided*—Mr. Marquez advised that where possible, SeniorCare focused on providing transport services primarily of a non-emergency nature to patients with low-level care needs. A review of the ACRs indicates that the vehicles completed ambulance calls as set forth below. For the months of March, April, and May, the table identifies the vehicle used and the applicable CON for each ambulance service call, and the type of facility/service where the transport originated and its destination. Most of the calls required transporting patients to or from their residence or a nursing home to a medical appointment (medical appointment, dialysis, rehabilitation, etc.). Four emergency calls were among those completed in March, and two each in April and May were designated as emergency. In all cases the ACRs indicated that the patients were delivered to their destinations as requested and in accordance with established procedures.

| CONS | March 2016 | April 2016 | May 2016 |
|---|---|---|---|
| 0164 | VEH 901<br>Hospital > Residence | VEH 901<br>Hospital > Hospital | VEH 901<br>NH > Hospital |
| 0470 | VEH 921<br>Medical Center > Hospital | VEH 921<br>Dialysis > Residence | VEH 921<br>NH > Medical Clinic |
| 0508 | VEH 921<br>NH > Hospital | VEH 901<br>Medical Clinic > NH | VEH 921<br>Residence > Dialysis |
| 0509 | VEH 921<br>NH > Hospital | VEH 901<br>Dialysis > Residence | VEH 921<br>Dialysis > Residence |
| 0510 | VEH 921<br>Medical Appt > Hospital | VEH 901<br>Residence > Hospital | VEH 921<br>Medical Clinic > NH |
| 0574 | VEH 921<br>Hospital > NH | VEH 901<br>Rehab > Hospital | VEH 901<br>Rehab > Hospital |
| 0667 | VEH 610<br>Dialysis > Residence | VEH 610<br>Residence > Dialysis | VEH 610<br>Dialysis > Residence |
|  | Source: ACR (NYS-EMS Form 100) | | NH = nursing home |

---

[5] If a service wishes to carry and administer controlled substances, it must obtain a Class C Dispensing License and comply with the rules and procedures found in NYCRR Part 80 Controlled Substances. This license is not required for the Debtors' vehicles because they do not carry controlled substances.

7

V.  **Issues that May Arise in the Next 60 Day Reporting Period**

   A. **Sale and Transfer of the CONs**

   By motion dated May 19, 2016, the Trustee requested approval of the Terms and Conditions of Sale between the Trustee and Maler Group LLC ("Maler Group") for all right, title and interest of the Debtors and the Trustee in, to and under the CONs, subject to higher or better offers that may be tendered to the Trustee at a sale (the "CONs Sale").  The Sale Terms provide that the sale and transfer of the CONs is contingent upon approval and transfer of the CONs in their entirety to the successful bidder by the New York State Department of Health and the applicable REMSCO in accordance with Article 30 of the Public Health Law (the "Article 30 Approval").  The sale process is expected to take place during June and July (sale approval hearing proposed for July 6, 2016).

   B. **Disposition of Healthcare Records**

   The Trustee is in the process of determining what patient and employee records were created, collected, and stored by the Debtors, and making recommendations to the Court for their appropriate disposition.  In the next several months, the Ombudsman will work with the Trustee to assist as needed in developing the proposed plan for the disposition of the electronic and paper healthcare records created and/or collected over the years by the Debtors.   Focus will be on ensuring compliance with applicable federal and state laws and requirements for retention and disposition of the records.

VI.  **Conclusion**

   As required by section 333 of the Bankruptcy Code, the Ombudsman has investigated the operation of the Debtors' three ambulances during the months of March, April, and May 2016

and found no evidence that the quality of patient care provided to patients of the Debtors has "declined significantly or is otherwise being materially compromised."

Pursuant to the Consent Order [Dkt. No. 54], the Ombudsman will arrange to have a copy of this Report and a notice of the forthcoming Report posted in at least two locations at the SeniorCare office.

The Ombudsman stands ready to provide whatever further analysis or recommendations the Court deems appropriate.

Respectfully submitted,

*/s/ Lucy L. Thomson*

Lucy L. Thomson
Patient Care Ombudsman