Bijan Amini
Avery Samet
Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
Special Counsel for Salvatore LaMonica,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| TRANSCARE CORPORATION, et al., | Case No. 16-10407 (DSJ) |
| Debtors. | (Jointly Administered) |

**SUMMARY SHEET**

**APPLICATION FOR ALLOWANCE OF FINAL PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES OF AMINI LLC, SPECIAL COUNSEL**

| Retention date: | February 7, 2020[1] |
|---|---|
| Compensation requested: | $17,198,888.62[2] |
| Expenses requested: | $98,176.05[3] |
| Total requested by application: | $17,297,064.67 |

This is a: ___ interim application  _X_ final application

---

[1] Storch Amini PC was employed as special counsel by order entered July 31, 2017, nunc pro tunc to June 5, 2017. (ECF Doc. #495.) Amini LLC substituted for Storch Amini PC by order entered February 7, 2020 (ECF Doc. #670), on substantially identical compensation terms, as described below.

[2] In accordance with Amini LLC's retention order (id. ¶6), this application seeks Court approval for division of allowed compensation as between it and Storch Amini PC.

[3] In accordance with Amini LLC's retention order (id. ¶7), this application seeks reimbursement of expenses incurred by Amini LLC and Storch Amini PC.

# SUMMARY OF TIME RECORDED

| Name | Title | Admitted | Hours | Rate[4] | Amount |
|---|---|---|---|---|---|
| Storch Amini PC | | | | | |
| Bijan Amini | Executive Officer | 1985 | 640.5 | $720 | $461,160 |
| Steven G. Storch | Executive Officer | 1978 | 21.3 | $720 | $15,336 |
| Lita Beth Wright | Executive Officer | 1994 | 5.3 | $585 | $3,100.50 |
| Avery Samet | Officer | 2004 | 1,963.1 | $495 | $971,734.50 |
| Edward Dolido | Officer | 1989 | 488.2 | $562.50 | $274,612.50 |
| Jason Levin | Officer | 2005 | 162.7 | $495 | $80,536.50 |
| John W. Brewer | Officer | 1994 | 79.8 | $562.50 | $44,887.50 |
| Casey Hail | Associate | 2009 | 43 | $385.50 | $16,447.50 |
| Jaime Leggett | Associate | 2011 | 2,939.1 | $337.50 | $991,946.25 |
| Jeffrey Chubak | Associate | 2008 | 191 | $450 | $85,950 |
| Julie Sher | Paralegal | -- | 5 | $99 | $495 |
| Julie Sher | Paralegal | -- | 110.1 | $157.50 | $17,340.75 |
| Matthew Roberts | Paralegal | -- | 37.2 | $157.50 | $5,859 |
| Alex Amini | Paralegal | -- | 16.2 | $99 | $1,603.80 |
| Anjanique Barber | Paralegal | -- | 297.4 | $99 | $29,442.60 |
| Christine Essler | Paralegal | -- | 19.9 | $135 | $2,686.50 |
| Claire Sheridan | Paralegal | -- | 19.5 | $99 | $1,930.50 |
| Claire Sheridan | Paralegal | -- | 144.6 | $157.50 | $22,774.50 |
| Gili Karev | Paralegal | -- | 1,388.2 | $99 | $137,431.80 |
| Julia Katzman | Paralegal | -- | 3.9 | $99 | $386.10 |
| Leah Khalil | Paralegal | -- | 438.3 | $99 | $43,391.70 |
| Niki Iskarpatyoti | Paralegal | -- | 672.8 | $99 | $66,607.20 |
| Ryan Bathras | Paralegal | -- | 1,453.9 | $99 | $143,936.10 |
| Ryan McGrath | Paralegal | -- | 84.6 | $99 | $8,375.40 |
| Sarah Lee | Paralegal | -- | 206.7 | $99 | $20,463.30 |
| Amini LLC | | | | | |
| Avery Samet | Member | 2004 | 349.8 | $495 | $173,151 |
| Bijan Amini | Member | 1985 | 285.2 | $720 | $205,344 |
| Lita Beth Wright | Member | 1994 | 183.6 | $585 | $107,406 |
| John W. Brewer | Of Counsel | 1994 | 116.1 | $562.50 | $65,306.25 |
| Jeffrey Chubak | Associate | 2008 | 399.5 | $450 | $179,775 |
| Casey Hail | Associate | 2009 | 26 | $382.50 | $9,945 |
| Charles Wollman | Associate | 2022 | 3.7 | $157.50 | $582.75 |
| Ryan Bathras | Paralegal | -- | 109.9 | $135 | $14,836.50 |
| Abla Laallam | Paralegal | -- | 12.5 | $117 | $1,462.50 |
| Anjanique Barber | Paralegal | -- | 155.3 | $117 | $18,170.10 |
| Leah Khalil | Paralegal | -- | 138.2 | $117 | $16,169.40 |
| Jack Ghirardi | Paralegal | -- | 2.5 | $67.50 | $168.75 |

---

[4] Rates indicated reflect 10% discount relative to standard attorney and paralegal billing rates. As the requested award is a contingency fee, there is no total amount billed based on said rates and no blended hourly rate.

# ITEMIZATION OF EXPENSES

| Expense Type | Amount |
|---|---|
| Storch Amini PC | |
| Taxi | $10,185.60 |
| Travel | $198.24 |
| Photocopies | $7,757.50 |
| Westlaw | $9,774.51 |
| PACER | $1,883.50 |
| Telephone services | $87.29 |
| Meals | $12,312.72 |
| Postage | $141.62 |
| Express mail | $153.13 |
| Filing Fee | $350.00 |
| Professional services—Robert Half | $40,871.28 |
| Messenger | $188.10 |
| Process server | $1,547.14 |
| UCC searches | $120.00 |
| Court reporter | $6,440.67 |
| Airfare | $1,426.80 |
| Hotel | $1,824.45 |
| **Subtotal:** | **$95,262.55** |
| Amini LLC | |
| PACER | $591.60 |
| Telephone services | $201.75 |
| Postage | $107.45 |
| Express mail | $151.20 |
| Process server | $1,381.50 |
| UCC searches | $480.00 |
| **Subtotal:** | **$2,913.50** |

**TOTAL: $98,176.05**

# PRIOR FEE APPLICATIONS

| Period Covered | Date Filed; ECF Doc. # | Fees Requested | Expenses Requested | Order Date; ECF Doc. # | Fees Allowed | Expenses Allowed |
|---|---|---|---|---|---|---|
| Storch Amini PC | | | | | | |
| 6/5/17-2/19/18 | 4/17/18; ECF Doc. #589 | $100,000 | $23,225.84 | 5/18/23; ECF Doc. #602 | $100,000 | $21,049.15 |
| Amini LLC | | | | | | |
| -- | -- | -- | -- | -- | -- | -- |

Bijan Amini
Avery Samet
Jeffrey Chubak
Amini LLC
131 West 35th Street
12th Floor
New York, New York 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
Special Counsel for Salvatore LaMonica,
Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| TRANSCARE CORPORATION, et al., | Case No. 16-10407 (DSJ) |
| Debtors. | (Jointly Administered) |

**APPLICATION FOR ALLOWANCE OF FINAL PROFESSIONAL COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES OF AMINI LLC, SPECIAL COUNSEL**

Amini LLC, special counsel for Salvatore LaMonica, Chapter 7 Trustee ("Trustee"), respectfully submits this first and final application for allowance of professional compensation and reimbursement of expenses.

1. Time and expense detail of Storch Amini PC, for which Amini LLC substituted as special counsel, as described below, and Amini LLC are attached as Exhibit 1 and Exhibit 2, respectively.

2. The certification required by the Amended Guidelines for Fees and Disbursements for Professionals in S.D.N.Y. Bankruptcy Cases is attached as Exhibit 3.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction to consider this application under 28 U.S.C. §§ 157(a) and 1334(b), and General Order M-431 (amended standing order of reference). This is a core

proceeding under 28 U.S.C. § 157(b)(2). This case is properly venued in this district under 28 U.S.C. § 1408.

## BACKGROUND

**I.    EVENTS PRECIPITATING THE BANKRUPTCY CASE**

4. The Debtors provided ambulance services for emergency and non-emergency patients to hospitals and municipalities in New York City, Westchester, the Hudson Valley, Pittsburgh and Maryland, and paratransit services to the MTA, through its Access-a-Ride program. (PFC at 2-3.)

5. Lynn Tilton ("Tilton") was the indirect, majority owner of TransCare Corporation, the parent corporation of the Debtors. (Id. at 4.) She was also its sole director. (Id.)

6. Tilton also owned and controlled the Debtors' term lender, Patriarch Partners Agency Services, LLC ("PPAS"). (Id.)

7. On February 24, 2016, at Tilton's direction PPAS foreclosed on certain of the Debtors' assets (the "Subject Collateral"), including the MTA contract. (Id. at 29.)

8. PPAS accepted the Subject Collateral in satisfaction of $10 million of roughly $43 million in outstanding debt. (Id. at 29.)

9. PPAS assigned the Subject Collateral to Transcendence Transit, Inc. and Transcendence Transit II, Inc. (together, "Transcendence"), contemplated operating companies which Tilton established two weeks prior. (Id. at 21, 30-31.)

10. That evening eleven Debtors commenced chapter 7 cases. (Id. at 31.)

11. On February 25, 2016, the Trustee was appointed.

12. Transcendence's business failed, and the assignment of the MTA contract was also unsuccessful. (Id. at 32-35.)

13. On April 25, 2016, three other Debtors commenced chapter 7 cases. (Id. at 36.)

2

14. PPAS filed a $35 million claim, reflecting a $10 million credit for receipt of the Subject Collateral. (Id. at 37.)

15. Ark II CLO 2001-1, Limited ("Ark II"), a Tilton affiliate and the majority owner of TransCare Corporation, and which had extended an emergency loan pre-foreclosure, filed a $1.1 million claim. (Id. at 7, 18, 37, 81-82.)

## II. STORCH AMINI PC'S EMPLOYMENT AS SPECIAL COUNSEL

16. Storch Amini PC was employed as special counsel by order entered July 31, 2017, nunc pro tunc to June 5, 2017, pursuant to 11 U.S.C. §§ 327(e) and 328(a). (ECF Doc. #495.)

17. The scope of its engagement was to (a) investigate (i) the filing of the bankruptcy cases, (ii) the payment and termination of certain employees, (iii) the conduct of the Debtors' officers, directors, professionals and investors and (iv) prepetition transactions; and (b) pursue any resulting claims and causes of action. (Id. ¶3.)

18. The retention order provided for Storch Amini PC to be compensated as follows:

> (a) in relation to its investigation, hourly up to $100,000, with 10% rate discount and $25,000 expense reimbursement cap;
>
> (b) in relation to litigation, one-third of any recovery realized by the Trustee on any claim or cause of action pursued by Storch Amini PC, after deducting reimbursable expenses and hourly fees allowed in relation to its investigation; and
>
> (c) if litigation results in a claim reduction, an amount to be negotiated with the Trustee (keyed to value delivered to the estate) not to exceed one-third of the reduction.

(Id. ¶¶4-5.)

## III. STORCH AMINI PC'S FIRST INTERIM FEE AWARD

19. On May 18, 2018, this Court awarded (ECF Doc. #602) Storch Amini PC interim fees of $100,000, for services rendered in relation to its investigation, and reimbursement of expenses in the amount of $21,049.15.

## IV. THE ADVERSARY PROCEEDING

20. On February 22, 2018, following Storch Amini PC's investigation, the Trustee commenced an adversary proceeding against Tilton, PPAS, Transcendence, Ark II and several other Tilton affiliates.

21. The complaint asserted *inter alia* claims against Tilton for breach of fiduciary duty and against PPAS and Transcendence for actual and constructive fraudulent conveyance.

22. On October 18, 2018, this Court entered a memorandum decision and order granting in part and denying in part the defendants' motion to dismiss the initial complaint and granting leave to amend. (No. 18-ap-1021, ECF Doc. #40.)

23. On November 28, 2018, the Trustee filed an amended complaint. (No. 18-ap-1021, ECF Doc. #53.)

24. The Trustee took six fact witness depositions from October 10-November 27, 2018 and thereafter served his expert report and deposed defendants' expert, with expert discovery concluding in March 2019.

25. On April 30, 2019, this Court entered a memorandum decision granting in part and denying in part the defendants' motion to dismiss the amended complaint. (No. 18-ap-1021, ECF Doc. #78.)

26. On May 2, 2019, the parties proceeded to mediation before Jed Melnick; however, no settlement was reached.

27. On May 6, 2019, defendants filed an amended answer to the amended complaint. (No. 18-ap-1021, ECF Doc. #84.)

28. On May 14, 2019, the Court entered a joint pretrial order. (No. 18-ap-1021, ECF Doc. #85.)

29. A six-day bench trial was conducted July 22-24, 2019 and August 8, 13-14, 2019. (No. 18-ap-1021, ECF Doc. #119-29.)

30. Prior to trial the parties briefed *in limine* motions and filed written opening statements and pretrial memoranda. (No. 18-ap-1021, ECF Doc. #102-17).

31. Post-trial, the parties submitted proposed findings of fact and conclusions of law and responses thereto. (No. 18-ap-1021, ECF Doc. #133-37.)

32. On July 6, 2020, this Court entered its proposed findings of fact and conclusions of law. (No. 18-ap-1021, ECF Doc. #138, "PFC".)

33. This Court recommended that the District Court enter a money judgment against Tilton in the sum of $41.8 million, on the claim against her for breach of the fiduciary duty of loyalty. (Id. at 2, 71.)

34. This Court entered judgment against PPAS and Transcendence on the fraudulent conveyance claims against them. (No. 18-ap-1021, ECF Doc. #141, "Bankruptcy Court Judgment".) The Bankruptcy Court Judgment (¶1) provided for a money judgment against PPAS and Transcendence "jointly and severally, in the amount of $39,200,000.00 plus pre-judgment interest in the amount of $6,025,523.29 … for a total judgment in the amount of $45,225,523.29"; (¶2) disallowed PPAS's claims under 11 U.S.C. § 502(d); (¶3) avoided Ark II's liens, preserving their value for the benefit of the estate under 11 U.S.C. § 551; and (¶4) extended the time for the Trustee to make a Debtor and Creditor Law § 276-a application for attorney's fees and costs until fourteen days after the Bankruptcy Court Judgment has become final.

## V. SUBSTITUTION OF AMINI LLC AS SPECIAL COUNSEL

35. On October 15, 2019 (post-trial), Storch Amini PC closed and ceased operations. The attorneys who primarily handled this engagement, Bijan Amini and Avery Samet, became members of Amini LLC. (ECF Doc. #669-1, ¶4.)

36. On February 7, 2020, this Court entered an order (ECF Doc. #670) substituting Amini LLC for Storch Amini PC as special counsel.[1]

37. Like Storch Amini PC's retention order, Amini LLC's provided for the firm to receive compensation as follows: (a) one-third of any recovery realized by the Trustee on any claim or cause of action pursued by the firm, after deducting reimbursable expenses and $100,000 (previously allowed hourly fees); and (b) if litigation results in a claim reduction, an amount to be negotiated with the Trustee not to exceed one-third of the claim reduction. (Id. ¶¶4-5.)

38. The retention order also provides:

> 6. At the time of application for a contingency fee (if any), Amini LLC will seek Court approval for division of any contingency fee between Storch Amini PC and Amini LLC. In the event of a dispute between Storch Amini PC and Amini LLC, the Court will determine the appropriate division.
>
> 7. To the extent recoveries are obtained, Amini LLC shall be allowed to apply for reimbursement of actual, reasonable and necessary out-of-pocket disbursements incurred by both Storch Amini PC and Amini LLC. To the extent such reimbursements are granted, Amini LLC shall apply the reimbursements first to the allowed reimbursable expenses of Storch Amini PC and second to the allowed reimbursable expenses of Amini LLC.

39. Amini LLC has not previously applied for allowance of interim compensation or reimbursement of expenses.[2]

---

[1] As noted in Amini LLC's employment application, "[t]he attorneys at Amini LLC were also the same attorneys at Storch Amini primarily responsible for the representation of the Trustee … as his special counsel." (ECF Doc. #669, ¶11.) Accordingly, there was no wasted effort in transition of the litigation.

[2] Sidley Austin LLP was also employed as special counsel (ECF Doc. #716) in relation to the below-described Second Circuit appeal. The terms of Amini LLC's compensation was not modified by Sidley's employment.

## VI. DISTRICT COURT PROCEEDINGS

40. PPAS and Transcendence appealed the Bankruptcy Court Judgment, and Tilton objected to the recommendation that the District Court enter judgment against her. (No. 18-ap-1021, ECF Doc. #167.)

41. The District Court affirmed the Bankruptcy Court Judgment against PPAS and Transcendence. (Id. at *4.)

42. As to Tilton, the District Court adopted the recommendation as to liability but reduced the damages award to $38.2 million. As summarized by the Second Circuit:

> The district court took a similar approach to calculating Tilton's liability for breaching her fiduciary duty. The court used the same valuation method to arrive at the $39.2 million figure but further subtracted another $1 million to account for the estimated 'buyer capital investment,' or the amount of money that a buyer would have to invest for the Subject Collateral to succeed as a going concern. Distr. Op. at *16; see also id. at *15. Thus, the district court concluded that Tilton owed the bankruptcy estate $38.2 million for the breach of her fiduciary duties.

*In re TransCare Corp.*, 2023 WL 5523719, at *5 (2d Cir. Aug. 28, 2023).

43. The District Court also awarded prejudgment interest at the rate of 6%/year from February 24, 2016 to the date of the judgment. *In re TransCare Corp.*, 2021 WL 5909794, at *1 (S.D.N.Y. Dec. 14, 2021).

44. The resulting judgment against Tilton ("District Court Judgment Judgment") is in the amount of $51,524,997.26.

## VII. SECOND CIRCUIT AFFIRMANCE OF BANKRUPTCY AND DISTRICT COURT JUDGMENTS

45. On August 28, 2023, the Second Circuit affirmed the Bankruptcy and District Court Judgments. *TransCare Corp.*, 2021 WL 5523719, at *15.

46. The mandate issued on November 8, 2023.

**VIII. SATISFACTION OF DISTRICT COURT JUDGMENT AGAINST TILTON**

47. The Tilton Judgment was fully bonded by Argo Insurance Company. In accordance with the District Court order entered November 16, 2023, Argo paid the Trustee $51,794,847.07 on November 29, 2023.

48. Said payment concluded the matter as against Tilton only.

<b><u>THE REQUESTED COMPENSATION SHOULD BE ALLOWED</u></b>

**I. THE REQUESTED COMPENSATION**

49. This application seeks:

   (a) Final allowance of compensation in the amount of one-third of the amount recovered on the Tilton Judgment ($51,794,847.07 ), less allowed expenses of Amini LLC and Storch Amini PC (i.e. $98,176.05 if allowed in full), less $100,000.

   Subtotal: $17,198,888.62

   <u>plus</u>

   (b) Reimbursement of expenses incurred by (i) Amini LLC in the amount of $2,913.50; and (ii) Storch Amini PC in the amount of $95,262.55, in accordance with Amini LLC's retention order. (ECF Doc. #670, ¶7.)

   Subtotal: $98,176.05

   Total fees and expenses requested hereby: $17,297,064.67.

50. Amini LLC is waiving its right to one-third of the $1.1 million secured claim filed by Ark II whose liens were avoided for the benefit of the estate under 11 U.S.C. § 551, which Amini LLC would otherwise be entitled to under ¶5 of its retention order.

## II. FEE APPLICATIONS ARE NOT SUBJECT TO REASONABLENESS REVIEW WHERE A CONTINGENCY FEE HAS BEEN PRE-APPROVED

51. 11 U.S.C. § 330(a)(1) provides that "[a]fter notice … and a hearing, and subject to section[] 328 … the court may award to a … professional person employed under section 327 … (A) reasonable compensation for actual, necessary services rendered by the … attorney and by any paraprofessional person employed by such person; and (B) reimbursement for actual, necessary expenses."

52. Section 328(a) in turn provides that "[t]he trustee … with the court's approval may employ … a professional person under section 327 … on any reasonable terms and conditions of employment, including … on a contingent fee basis."

53. Thus, fee applications are subject to a reasonableness review only where the fee has not been preapproved under section 328(a). As noted in *In re Relativity Fashion*, 2016 WL 8607005 (Bankr. S.D.N.Y. Dec. 16, 2016):

> Different standards apply to the review of fee applications depending on whether or not the terms of employment have been approved under Section 328(a) …
>
> Essentially, under Section 328, reasonableness is judged in advance, and the issue is not revisited except in the very narrow circumstances permitted by the statute.
>
> Without a Section 328(a) approval, however, Section 330 calls for a review of reasonableness that, to some extent, is made after-the-fact, although the case law makes clear that the judgment is not supposed to be done completely with 20/20 hindsight.

*Id.* at *2. *See also In re Smart World Technologies, LLC*, 552 F.3d 228, 233 (2d Cir. 2009) (quoting *In re B.U.M. Int'l, Inc.*, 229 F.3d 824, 829 (9th Cir. 2000)) ("'These two inquiries are mutually exclusive, as 'there is no question that a bankruptcy court may not conduct a § 330 inquiry into

the reasonableness of the fees and their benefit to the estate if the court has already approved the professional's employment under 11 U.S.C. § 328'").

54. The reason for the alternate approaches was explained in *Donaldson Lufkin & Jenrette Secs. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code … Under present § 328 the professional may avoid that uncertainty by obtaining approval of compensation agreed to with the trustee …
>
> If the most competent professionals are to be available for [bankruptcy work], they must know what they will receive for their expertise and commitment. Courts must protect those agreements and expectations, once found to be acceptable.

*Id*. at 862-83. *See also Relativity*, 2016 WL 8607005, at *3 ("Section 328(a) reflects the view that professionals are entitled to know what they are likely to be paid for their work. If you agree to hire someone on a flat fee or percentage-fee basis, there should be some comfort that the compensation will be paid and that a court will not simply impose a new and different deal after all the work has been done").

### III. THE SUBJECT COMPENSATION TERMS WERE PRE-APPROVED

55. The Second Circuit has endorsed the Sixth Circuit's test for determining whether or not a court has pre-approved a fee arrangement. *Smart World*, 552 F.3d at 233. Under that test, the relevant inquiry is as follows:

> Whether a court "pre-approves" a fee-arrangement under § 328 should be judged by the totality of the circumstances, looking at both the application and the bankruptcy court's order. Factors in the determination may include whether the debtor's motion for appointment specifically requested fee pre-approval, whether the court's order assessed the

> reasonableness of the fee, and whether either the order or the motion expressly invoked § 328.

*In re Airspect Air, Inc.*, 385 F.3d 915, 920 (6th Cir. 2004).

56. The application to employ Amini LLC (as well as that to employ Storch Amini PC), and the order granting the same all invoke section 328, and state the percentage fee awarded, except as to the provisions relating to claim objections which provides for a negotiated contingency award and fixes a one-third cap.

57. The orders also provide "The application is granted to the extent provided herein." This type of language (e.g., application is granted "upon the terms … set forth in the Application") constitutes approval under section 328. *In re Fashion Shop of Kentucky, Inc.*, 350 Fed. App'x 24, 27 (6th Cir. 2009).

58. Accordingly, there can be little doubt that the subject compensation agreement has been pre-approved under section 328.

## IV. THE COMPENSATION TERMS DID NOT PROVE IMPROVIDENT IN LIGHT OF DEVELOPMENTS INCAPABLE OF BEING ANTICIPATED

59. Given preapproval of the subject fees, the sole issue is whether the compensation terms should be modified because they "prove[d] to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms" under section 328(a). The answer is plainly no.

60. At the outset, courts are "severely constrained" in determining if developments were "incapable of anticipation." *Smart World*, 552 F.3d at 235.

61. More significantly, the amount of the contingency fee award cannot be considered a development incapable of being anticipated. No objection was imposed, either to the terms of Storch Amini PC's or Amini LLC's compensation, and the Trustee and the Debtors' non-defendant creditors wanted to achieve precisely the result realized. The award also is not excessive in light

of the challenge, risk, and cost undertaken. *Id.* ("that contingency fees may appear excessive in retrospect is not a ground to reduce them").

62. Nor can the length of time that elapsed prior to entry of a judgment be considered a factor incapable of anticipation and is definitely not unusual in a case this complex. *Id*. ("the unusually prolonged procedur[al] path of this litigation" is not a factor incapable of anticipation, for "the prospect of prolonged litigation always exists"); *In re Magnesium Corporation*, 01-bk-14312 (Bankr. S.D.N.Y.) (ECF Doc. #976) (attached as Exhibit 4) (approving 41% contingent fee award where bankruptcy litigation continued for "well over a decade").

63. Moreover, a one-third contingency fee is not atypical in the context of complex commercial or bankruptcy litigation. Indeed, higher awards are regularly approved. *E.g. id.* (approving 41%, $88 million contingent fee award); *In re Merry-Go-Round Enters., Inc.*, 244 B.R. 327, 337, 345 (Bankr. D. Md. 2000) (enforcing 40%, $71.2 million contingent fee award, and noting the "important policy consideration for honoring fee agreements with professionals"); *In re Xunlight Corp.*, 2015 WL 9438744, at *5 (Bankr. N.D. Ohio Dec. 23, 2015) ("overall, a 40% contingent fee recovery is not unusual or unreasonable in the context of complex commercial litigation with an unknown and uncertain but certainly risky chance of success and recovery for the estate").

64. Accordingly, the requested contingency fee award is not subject to modification on the ground that the engagement's terms proved improvident in light of unanticipated-able subsequent developments.

## THE PROPOSED DIVISION OF CONTINGENCY FEES SHOULD BE APPROVED

65. Amini LLC seamlessly substituted for Storch Amini PC during the pendency of the litigation. Storch Amini PC and Amini LLC have agreed, subject to Court approval, to divide the contingency award as follows:

| Storch Amini PC | Amini LLC |
| --- | --- |
| 50% of first $3.5 million | 50% of first $3.5 million |
| 33% of second $3.5 million | 67% of second $3.5 million |
| 25% of third $3.5 million | 75% of third $3.5 million |
| 20% of remainder | 80% of remainder |

66. In accordance with its retention order (ECF Doc. #670, ¶6), Amini LLC requests approval of said proposed division on behalf of both firms.

67. 11 U.S.C. § 504(a) prohibits "sharing" of professional compensation and expenses awarded in bankruptcy cases. The proposed division does not violate the statute, because both firms were retained to represent the Trustee in the adversary proceeding and subsequent appeals. *E.g. In re Ferguson*, 445 B.R. 744, 757 (Bankr. N.D. Tex. 2011) (explaining how employment by trustee cures section 504(a) violation).

## NO PRIOR REQUEST

68. No prior request for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, the requested contingency award and reimbursement of expenses should be allowed on a final basis, and the proposed division of fees as between Storch Amini PC and Amini LLC should be approved.

Dated: New York, New York　　　　　　　　Amini LLC
　　　　　January 8, 2024

　　　　　　　　　　　　　　　　　　　　/s/ Avery Samet
　　　　　　　　　　　　　　　　　　　　Bijan Amini
　　　　　　　　　　　　　　　　　　　　Avery Samet
　　　　　　　　　　　　　　　　　　　　Jeffrey Chubak
　　　　　　　　　　　　　　　　　　　　131 West 35th Street
　　　　　　　　　　　　　　　　　　　　12th Floor
　　　　　　　　　　　　　　　　　　　　New York, New York 10001
　　　　　　　　　　　　　　　　　　　　(212) 490-4700
　　　　　　　　　　　　　　　　　　　 asamet@aminillc.com
　　　　　　　　　　　　　　　　　　　　jchubak@aminillc.com
　　　　　　　　　　　　　　　　　　　　Special Counsel for Salvatore LaMonica,
　　　　　　　　　　　　　　　　　　　　Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| TRANSCARE CORPORATION, et al., | Case No. 16-10407 (DSJ) |
| Debtors. | (Jointly Administered) |

## CERTIFICATION OF AVERY SAMET

I, Avery Samet, hereby certify that:

1. I am a member of Amini LLC, special counsel for the trustee herein; and was previously an officer of Storch Amini PC, which Amini LLC substituted for as special counsel.

2. This certification is submitted pursuant to the Amended Guidelines for Fees and Disbursements for Professionals in S.D.N.Y. Bankruptcy Cases, in relation to Amini LLC's prefixed application for final professional compensation.

3. I have read the application. To the best of my knowledge, information and belief, formed after reasonable inquiry, the fees and expenses sought in the application fall within the amended guidelines, except as specifically noted herein and in the application. To avoid doubt, photocopies were billed at $.10/page and no expense reimbursement is being sought for paralegal overtime.

4. The expenses sought in the application were billed at rates and in accordance with practices customarily employed by Amini LLC and Storch Amini PC and generally accepted by their clients.

5. In providing any reimbursable service, Amini LLC and Storch Amini PC did not make a profit on such service, whether performed in-house or through a third party.

6. The trustee was given the opportunity to review the Application prior to its being filed and has approved the requested compensation and expenses.

7. Amini LLC and Storch Amini PC agreed to allocate the contingency fee award herein as follows:

| **Storch Amini PC** | **Amini LLC** |
|---|---|
| 50% of first $3.5 million | 50% of first $3.5 million |
| 33% of second $3.5 million | 67% of second $3.5 million |
| 25% of third $3.5 million | 75% of third $3.5 million |
| 20% of remainder | 80% of remainder |

8. Except as described above with respect to the division of the contingency fee award, and except as permitted by 11 U.S.C. § 504(b) and Rule 2016(a), no agreement or understanding exists between Amini LLC and any other person for the sharing of compensation received or to be received for services rendered in connection herein.

I certify under penalty of perjury that the foregoing is true and correct. Executed on January 8, 2024.

/s/ Avery Samet